**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| CLOUDOFCHANGE, LLC,<br><br>　　　　　　Plaintiff,<br>v.<br><br>CLOVER NETWORK, INC.,<br><br>　　　　　　Defendant. | Civil Action No. 6:22-CV-00634-ADA-DTG<br><br>JURY TRIAL DEMANDED<br><br><span style="color:red">REDACTED PUBLIC VERSION</span> |

**CLOVER NETWORK, LLC'S OPPOSED MOTION TO TRANSFER VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................. iii

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ...................................................................................2

        A.      The lawsuit, the asserted patents, and the accused products.....................2

        B.      Clover's witnesses and evidence are predominantly in the NDCA .......................2

        C.      No Clover witness or evidence is in the WDTX.......................................4

        D.      Key third-party witnesses are in the NDCA ...........................................4

        E.      Plaintiff's witnesses and evidence, including all named inventors,
                are outside the WDTX ..............................................................5

        F.      There is no pending litigation in the WDTX involving the
                Asserted Patents that has any bearing on judicial efficiency .................5

III.    LEGAL STANDARD ..............................................................................................7

IV.     ARGUMENT ........................................................................................................7

        A.      Plaintiff could have brought this suit in the NDCA, where Clover resides.............7

        B.      The private interest factors strongly favor transfer to the NDCA ..........................8

                1.      Most witnesses are located in the NDCA, and the NDCA
                        is more accessible to all other potential witnesses......................................8

                2.      The NDCA has subpoena power over numerous non-party
                        witnesses, but the WDTX does not.............................................................9

                3.      Sources of proof are in the NDCA and can be more easily
                        accessed there......................................................................................10

        C.      The public interest factors strongly favor transfer to the NDCA..........................11

                1.      The NDCA—where Clover is headquartered and developed
                        the Accused Products—has the stronger local interest..............................11

## TABLE OF CONTENTS (cont.)

**Page**

2.    The practical considerations factor is neutral ............................................13

3.    The court congestion factor is neutral......................................................14

4.    The familiarity of law and conflict-of-law factors are neutral..................15

V.    CONCLUSION....................................................................................................15

CERTIFICATE OF CONFERENCE..............................................................................16

CERTIFICATE OF SERVICE ......................................................................................16

## TABLE OF AUTHORITIES

**Federal Cases**                                                                              **Page(s)**

*CloudofChange, LLC v. NCR Corp.*,
No. 6:19-CV-00513, 2020 WL 6439178 (W.D. Tex. Mar. 17, 2020)......................................6, 10

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010).....................................................................................................9

*In re Apple Inc.*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. 2022) ...................................................................14

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)........................................................................................7, 10, 12

*In re DISH Network LLC*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)........................................9, 10, 13, 14

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009).....................................................................................................9

*In re Google, LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ...............................................8, 9, 11

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)...................................................................................................12

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020) ................................................................................................7

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) .........................................................................................6, 8, 14, 15

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009).....................................................................................................7

*In re Pandora Media, LLC*,
No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)........................................................9

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ......................................................................................................14

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ...................................................................................7, 13

## **TABLE OF AUTHORITIES (cont.)**

**Federal Cases**                                                                                               **Page(s)**

*In re Fedex Corp. Servs., Inc.*,
No. 2022-156, 2022 WL 10887770 (Fed. Cir. Oct. 19, 2022)......................................................12

*In re: NetScout Sys., Inc.*,
No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)..................................................13, 14

*LBT IP II LLC v. Uber Techs., Inc.*,
No. 6:21-cv-1210-ADA, 2022 WL 2541355 (W.D. Tex. July 6, 2022)......................................12

*LoganTree v. Apple Inc.*,
No. 6:21-CV-00397-ADA, 2022 WL 1491097 (W.D. Tex. 2022)...........................................6, 15

*ParkerVision, Inc. v. Intel Corp.*,
No. 6:20-cv-00108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021)..............................13, 14

*XR Commc'ns, LLC v. HP Inc.*,
No. 6:21-cv-694-ADA, 2022 WL 3448746 (W.D. Tex. Aug. 17, 2022) ......................... 11, 13-15

**Federal Statute**

28 U.S.C. § 1404....................................................................................................................7, 8

## I.    INTRODUCTION

CloudofChange, LLC's infringement claims belong in the Northern District of California ("NDCA"), where Clover Network, LLC ("Clover")[1] is based and where key party and non-party witnesses and evidence are located.  Accordingly, Clover moves to transfer this case to the NDCA under 28 U.S.C. § 1404(a).

This forum has no connection to the parties, witnesses, or facts relevant to Plaintiff's claims for alleged infringement of United States Patent Nos. 9,400,640 ("'640 Patent"), 10,083,012 ("'012 Patent"), and 11,226,793 ("'793 Patent") ("Asserted Patents").  The accused Clover products were developed in California, not Texas, and certainly not in the Western District of Texas ("WDTX").  No Clover employees involved in or knowledgeable about the research, development, design, or marketing of the accused products are in this District.  Plaintiff, a New York entity based in New York, has no presence in this District, aside from its legally irrelevant infringement litigation portfolio.  In fact, Plaintiff's recent disclosures confirm that it has no potential trial witness that resides in Texas.

In contrast, the NDCA is where Clover's principal place of business is located, where Clover's relevant personnel live, and where relevant third-party witnesses are subject to compulsory process.  It is also where party and non-party witnesses can more easily travel to attend trial.  Because the NDCA is unquestionably the clearly more convenient forum, the Court should transfer this case to that venue under § 1404(a).

---

[1] "Clover" refers to Clover Network, LLC, formerly known as Clover Network, Inc.  Clover Network, Inc. converted to Clover Network, LLC in 2021, before Plaintiff filed this lawsuit.  Decl. of Stephen Ravel, attached as **Exhibit A** ¶ 3 and Ex. A-1.

## II.    FACTUAL BACKGROUND

### A.    The lawsuit, the asserted patents, and the accused products.

Plaintiff's Complaint alleges that four of Clover's point-of-sale ("POS") products—(1) Clover Station Solo, (2) Clover Station Duo, (3) Clover Mini, and (4) Clover Dashboard (the "Accused Products")—infringe the Asserted Patents.  Dkt. 1 ¶ 8.  Plaintiff claims that it is the owner by assignment of the Asserted Patents, which are generally directed to a web-based POS-building system.  *Id.* ¶¶ 2, 14.  Plaintiff asserts direct and indirect infringement claims based on Clover allegedly "making, using, importing, selling, and/or offering the Accused Products" across the United States.  *Id.* ¶¶ 14, 18, 20, 22.

### B.    Clover's witnesses and evidence are predominantly in the NDCA.

Clover is a Delaware corporation with its principal place of business in Sunnyvale, California, within the NDCA.  Ex. A-1; Decl. of ███████████ ¶ 6, attached as **Exhibit B**.  Clover has approximately 200 employees at its Sunnyvale headquarters.  *Id.*  Clover researched, designed, developed, and launched the Accused Products exclusively at its Sunnyvale headquarters, where most of that work continues to take place today. The Accused Products are used and sold by merchants and distributors nationwide.  *Id.* ¶¶ 7-8; Declaration of ███████████ ¶¶ 9-12, attached as **Exhibit C**; Decl. of ███████████ ¶¶ 11-13, attached as **Exhibit D.**

Clover personnel responsible for the current research, design, and development of the Accused Products are primarily California residents who live near their office at Clover's Sunnyvale, California headquarters.  Ex. B ¶¶ 15-17; Ex. C ¶¶ 2, 7, 9-11; Ex. D ¶¶ 2, 5, 13.  Likewise, Clover personnel primarily responsible for product management, marketing, and sales of the Accused Products are in Sunnyvale, California, and some are in New York.  Ex. B ¶¶ 1-3, 7, 12-14, 16, 18.  These Clover employees are Clover's potential trial witnesses in this case:

2

| Name | Title | Residence | Relevance |
|------|-------|-----------|-----------|
| ███████████ | ██████████ | Sunnyvale, CA | ███████ leads technical research, design, and development of the Accused Products. *See generally* Ex. C. |
| █████████ | ██████████ | Campbell, CA | ██████ leads technical research, design, and development of Clover Dashboard. *See generally* Ex. D. |
| ██████ | █████████ | Sunnyvale, CA | ██████ is involved in the technical research, development, and design of the Accused Products. Ex. B ¶ 17. |
| █████████ | █████████ | Sunnyvale, CA | ████████ leads product management, which entails product requirements, management, market research, and design for the Accused Products. *See generally id.* |
| ████████ | █████████ | New York City, NY | ███████ is involved in design of the Accused Products. *Id.* ¶ 14. |
| ██████ | ████████ ██ | San Jose, CA | █████ is knowledgeable about Clover Dashboard and its use along with other Accused Products. *Id.* ¶ 16. |
| █████████ | █████████ | New York City, NY | ███████ leads the nationwide marketing of the Accused Products. *Id.* ¶ 18. |

Relevant documents relating to the research, design, and development of the Accused Products have historically been created in Sunnyvale, California, where the products were initially developed and launched.  Ex. B ¶ 25; Ex. C ¶ 14; Ex. D ¶ 14.  These documents continue to be created primarily by personnel in Sunnyvale today, and some Clover Dashboard-related documents are now created in Colorado and New York as well.  Ex. D ¶¶ 13-14.  Likewise, documents related to marketing and nationwide sales efforts are primarily created in both Sunnyvale and New York.  Ex. B ¶ 25.  Moreover, prototypes for various development stages of the Clover Mini, Clover Duo, and Clover Solo are created and maintained in Clover's hardware lab, which is located in its Sunnyvale, California headquarters.  Ex. C ¶ 15.  Accordingly, most if not all custodians of Clover's relevant evidence are in Sunnyvale and New York.  Ex. B ¶ 14; Ex. C ¶ 14; Ex. D ¶ 14.

### C.    No Clover witness or evidence is in the WDTX.

Clover is unaware of any potential trial witness with relevant knowledge of the Accused Products in the WDTX or anywhere else in Texas.  Ex. B ¶¶ 8-9, 12; Ex. C ¶ 12; Ex. D ¶ 12.  The less than ten Clover employees who are based in Austin, Texas have no relevant responsibilities related to the research, design, development, marketing, or sales of the Accused Products.  Ex. B ¶ 8; Ex. C ¶ 12; Ex. D ¶¶ 11-12.  And Clover has not identified a single custodian of key documents or evidence in the WDTX or elsewhere in Texas.  Ex. B ¶ 25; Ex. C ¶ 14; Ex. D ¶ 14.

### D.    Key third-party witnesses are in the NDCA.

At least *five* key, third-party witnesses who worked for Clover and likely have relevant knowledge of the research, design, and development of the Accused Products reside in the NDCA:

(1)        █████████ resides in San Carlos, California.  *Id.* ¶ 20.  ███████ is
           Clover's co-founder and served as Clover's CEO from 2016 to 2020.  *Id.* ¶
           20.  Plaintiff is suing Clover for willful infringement based on a "Notice

4

        Letter" it claims to have sent to ██████████ in 2018.  *See* Ex. B ¶ 19; Dkt. 1 ¶ 23 and Ex. 4.

(2)      ██████████████ served as Clover's COO from 2017 to 2021.  Ex. B ¶ 23. ████████████████ lives in Los Altos, California.

(3)      ████████████ is Clover's former Head of Product Design, and she lives in San Mateo, California. *Id.* ¶ 21.

(4)      ████████████ served as Clover's VP of Engineering from 2013 to 2021, and he lives in Mountain View, California. *Id.* ¶ 22.

(5)      ██████████████ served as Clover's SVP, Head of Hardware from 2013 to 2021 and resides in Campbell, California. Ex. B ¶ 24; Ex. C ¶ 13.

While these potential non-party witnesses are within the subpoena power of the NDCA, none are subject to compulsory process in the WDTX.

**E.**    **Plaintiff's witnesses and evidence, including all named inventors, are outside the WDTX.**

Plaintiff is a New York limited liability company with its principal place of business in Poughkeepsie, New York. Dkt. 1 ¶ 2.  Plaintiff's founders are Wayne Baratta and Quentin Olson, who also are the only named inventors of the Asserted Patents. *Id.* ¶ 16.  In each of the Asserted Patents (the last dated January 18, 2022), Mr. Baratta is designated as a resident of Poughkeepsie, New York, and Mr. Olson is designated as a resident of Port Townsend, Washington. *Id.* at Exs. 1-3.  Other than litigation, Plaintiff and the named inventors do not appear to have any connection to the WDTX.

**F.**    **There is no pending litigation in the WDTX involving the Asserted Patents that has any bearing on judicial efficiency.**

Plaintiff has previously filed complaints in this District against other defendants, alleging infringement of two or more of the Asserted Patents.  Original Compl. (Dkt. 1), *CloudofChange,*

*LLC v. NCR Corp.*, 6:19-cv-00513-ADA (Aug. 30, 2019) ("NCR Action");[2] First Am. Compl. (Dkt. 30), *CloudofChange, LLC v. Lightspeed POS Inc.*, 6:21-cv-01102-ADA (Oct. 22, 2021).[3]

The NCR Action proceeded to trial, and Plaintiff did not designate any trial witness that resided in or was subject to compulsory process in the WDTX.[4] The jury found that NCR infringed certain claims of the '640 and '012 Patents, and NCR failed to prove that the asserted claims were invalid. Verdict (Dkt. 159), *NCR Action* (filed May 20, 2021). Though the NCR Action is pending final judgment, no further judicial proceedings are expected (absent a reversal and remand from the Federal Circuit), and the case is thus not likely to be co-pending with this case.

The Lightspeed Action has not yet been tried but, on October 20, 2022, the USPTO instituted *inter partes* review of claims 1-28 in the '640 Patent, determining that Lightspeed "established a reasonable likelihood of success" on its argument that the claims are unpatentable. Ex. A-3.[5] Lightspeed has indicated that it "intends to seek a stay of the Lightspeed Litigation in the event of IPR institution," and any suggestion that it will be pending at the same time of this case is therefore speculative at best. Ex. A-2.

---

[2] NCR Corp. is a Maryland Corporation based in Atlanta, Georgia. This Court denied NCR's motion to transfer based on a rationale the Federal Circuit subsequently overturned and this Court no longer employs. *Compare e.g.*, *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-00513, 2020 WL 6439178, at *6 (W.D. Tex. Mar. 17, 2020) (denying transfer after finding that the court congestion factor weighed against transfer due to the court's scheduling order), *with In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (holding that it is "improper" to rely on a "scheduling order" to assess time-to-trial, declaring the court congestion the "most speculative" factor, and diminishing the factor's importance) and *LoganTree v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *7 (W.D. Tex. 2022) (Albright, J.) (recognizing same).

[3] Lightspeed POS, Inc. did not seek transfer.

[4] In the NCR Action, Plaintiff designated only six trial witnesses. *See* Witness List (Dkt. 149), NCR Action (filed May 19, 2021). Two were Mr. Baratta and Mr. Olson, who reside in New York and Washington, respectively. Two were employees of NCR, Kristin Schoonover and McGill Quinn—both of which reside in Georgia and are irrelevant to this proceeding. And the final two were experts. It appears there were no third-party witnesses. Of the party witnesses, none resided in the WDTX.

[5] Lightspeed also filed a Petition for *Inter Partes* Review of claims 1-20 of Patent '012 on May 5, 2022, and a Petition for *Inter Partes* Review of claims 1-4, 7-28, and 31-44 of Patent '793 on June 13, 2022. Ex. A ¶¶ 5-6. Those petitions remain pending, and decisions are due on November 18, 2022, and December 21, 2022, respectively.

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice," a court may transfer a case to any district where the case could have been brought.  28 U.S.C. § 1404(a).  In evaluating relative convenience, courts weigh the "private" and "public interest" factors.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-15 (5th Cir. 2008) (en banc).  The private interest factors are: "(1) relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (quoting *Volkswagen*, 545 F.3d at 315).  The public interest factors on the other hand are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."  *Id.*

"[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  The transferee venue is clearly more convenient when, as here, it is the defendant's home forum, and the transferor venue "has no direct connection to any witnesses, source of proof, or interest in th[e] case."  *In re HP Inc.*, 826 F. App'x 899, 903-04 (Fed. Cir. 2020).

## IV.    ARGUMENT

### A.    Plaintiff could have brought this suit in the NDCA, where Clover resides.

Because Clover maintains its principal place of business in Sunnyvale, California, it operates a regular and established place of business within the NDCA, and both personal

jurisdiction and venue are proper in the NDCA.  Accordingly, the Court may transfer this action

to the NDCA because it is a district where suit "might have been brought."  28 U.S.C. § 1404(a).

### B.      The private interest factors strongly favor transfer to the NDCA.

#### 1.      Most witnesses are located in the NDCA, and the NDCA is more accessible to all other potential witnesses.

The "relative convenience for and cost of attendance of witnesses between the two forums

is probably the single most important factor in transfer analysis."  *In re Juniper Networks, Inc.*, 14

F.4th 1313, 1318 (Fed. Cir. 2021) (citation omitted).  This inquiry is focused on "the cost and

inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be

away from their homes and work for an extended period of time."  *In re Google, LLC*, No. 2021-

170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).  Courts must consider non-party and

party witnesses under this factor.  The inconvenience of a far-away venue is neither "attenuated"

nor diminished simply because a witness is employed by a party.  *See Juniper*, 14 F.4th at 1320.

Here, Clover's witnesses and potential non-party witnesses are almost all in the NDCA,

while none are in the WDTX:

- Party witnesses—Clover's senior personnel with responsibility for and knowledge of the research, design, development, marketing, and sales of the Accused Products—are located primarily in the NDCA.  *See* Ex. B ¶¶ 1, 12-13, 15-17; Ex. C ¶¶ 2, 4, 9-11; Ex. D ¶¶ 2, 5;

- No party witness is located in this District;

- Non-party witnesses—former senior Clover employees who had responsibility for the Accused Products—also reside in the NDCA.  *See* Ex. B ¶¶ 19-24; Ex. C ¶ 13; and

- Clover is unaware of any potential non-party witnesses located in this District.  Ex. B ¶¶ 8-9, 12; Ex. C ¶ 12; Ex. D ¶¶ 11-12.

Undoubtedly, the NDCA is far more convenient for these witnesses, who will otherwise have to

travel over 1,700 miles to attend trial in a venue with no connection to this dispute.

The NDCA is also more convenient for Plaintiff's witnesses, Mr. Olson and Mr. Baratta—the only individuals identified in Plaintiff's own Initial Disclosures—who are Plaintiff's alleged founders and the inventors of the Asserted Patents.  *See* Dkt. 1 ¶ 16 and Exs. 1-3.  Mr. Olson resides in Port Townsend, Washington, which is approximately 850 miles from the NDCA but over 2,000 miles from the WDTX.  Dkt. 1 at Exs. 1-3.  Mr. Baratta resides in Poughkeepsie, New York, a significant distance from both the WDTX and the NDCA.  Dkt. 1 at Exs. 1-3.  Both Mr. Baratta and Mr. Olson can fly directly to San Francisco International Airport, but "[t]here is no major airport in the Waco Division."  *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021).  Thus, litigating the case in this District would impose the additional burden of increased travel time spent driving to Waco.  *Id.*  Plaintiff's witnesses will therefore face longer and more cumbersome travel to reach the WDTX, making the NDCA the more convenient venue even for them.

Because there are "numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum," this "most important" witness-convenience factor strongly favors transfer.  *Google*, 2021 WL 4427899, at *4.

### 2.    The NDCA has subpoena power over numerous non-party witnesses, but the WDTX does not.

A venue's ability to compel testimony via its subpoena power also is an "important factor in the § 1404(a) calculus."  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).  When the "transferee venue is a venue with usable subpoena power," the factor "weighs in favor of transfer, and not only slightly."  *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (the compulsory process factor favors transfer when non-party witnesses and "former employees" are in the transferee district and no such witnesses are in Texas).

Here, numerous potential non-party witnesses are subject to the subpoena power of the NDCA, including Clover's: (1) former CEO ████████), (2) former COO ████████, (3) former SVP, Head of Hardware ████████, (4) former Head of Product Design ████████, and (5) former Head of Hardware Engineering ████████).  Ex. B ¶¶ 20-23.  These witnesses likely have relevant information regarding the research, design, development, and marketing of the Accused Products, as well as the Notice Letter that Plaintiff relies on as support for its willful infringement claims.  *See id.*; Ex. C ¶ 13; Dkt. 1 at ¶ 23 and Ex. 4.

In contrast, Clover is not aware of a single potential trial witness who resides in or is subject to compulsory process in this District.[6]  Ex. B ¶¶ 8-9, 12; Ex. C ¶ 12; Ex. D ¶¶ 11-12.  Neither Plaintiff nor Clover is based in the WDTX, and Plaintiff did not identify a single witness residing in the WDTX in its Initial Disclosures.  Ex. A-4.  Nor did Plaintiff designate any trial witness residing in this District in the NCR Action.  *See* Witness List (Dkt. 149), NCR Action (filed May 19, 2021).  Because the NDCA has subpoena power over numerous potential non-party witnesses and this District does not, the compulsory process factor weighs strongly in favor of transfer.  *See Dish*, 2021 WL 4911981, at *3.

### 3. Sources of proof are in the NDCA and can be more easily accessed there.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."  *Apple*, 979 F.3d at 1340.  In addressing the private interest factor of a venues' relative ease of access to sources of proof, courts must consider where documents are stored, as

---

[6] To the extent Plaintiff leans on Austin or Waco branches of distributors of Clover products, *see* Dkt. 1 ¶ 9, Clover and those distributors sell Clover products nationwide, including in Northern California.  Ex. B ¶¶ 10-11.  This Court has rightly rejected Plaintiff's reliance on nationwide customers before, and it should do so again here.  *CloudofChange, LLC*, 2020 WL 6439178, at *4 ("CloudofChange has not shown any of these potential witnesses are more essential than other NCR Silver customers, and NCR has already identified one such customer within the proposed transferee venue.").

well as "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *Google*, 2021 WL 4427899, at *2.

Here, Clover (the alleged infringer) is based in the NDCA, where the Accused Products were and continue to be researched, designed, and developed.  Documents relating to this work, as well as the marketing and sales of the Accused Products, are also primarily created, maintained, and accessed in the NDCA, and the custodians of that evidence are therefore also in the NDCA. Ex. B ¶¶ 6-7, 25; Ex. C ¶¶ 9-11, 14; Ex. D ¶¶ 13-14.  Likewise, physical evidence—such as prototypes—are also in the NDCA.  Ex. C ¶ 15.  No documents or document custodians relating to the research, design, development, marketing, and sales of the Accused Products are in the WDTX.  *See* Ex. B ¶ 24; Ex. C ¶ 14; Ex. D ¶ 14.

Plaintiff, in turn, is based in New York, and its founders live in New York and Washington.  Dkt. 1 ¶¶ 2, 16 and Exs. 1-3.  Any relevant documents in Plaintiff's possession, therefore, do not appear to be in Texas.

Because "most of the relevant evidence comes from the accused infringer," and there are "no relevant documents" created or "stored in WDTX, it is likely that documentary evidence is more easily accessible in the NDCA."  *XR Commc'ns, LLC v. HP Inc.*, No. 6:21-cv-694-ADA, 2022 WL 3448746, at *3 (W.D. Tex. Aug. 17, 2022) (Albright, J.).  Accordingly, this factor strongly favors transfer.

## C.   The public interest factors strongly favor transfer to the NDCA.

### 1.   The NDCA—where Clover is headquartered and developed the Accused Products—has the stronger local interest.

A venue has a local interest when there are "significant connections between [the] venue and the events that gave rise to a suit"; a party's general presence in a venue that is untethered to the litigation does not suffice.  *Apple*, 979 F.3d at 1345.  "The crux of this factor is to identify

where the events forming the basis for infringement—design, development, and sale of the accused products—transpired."  *LBT IP II LLC v. Uber Techs., Inc.*, No. 6:21-cv-1210-ADA, 2022 WL 2541355, at *8 (W.D. Tex. July 6, 2022) (citation omitted).  The venue where those events occurred has a "strong" local interest because the claim "calls into question the work and reputation of … individuals residing in or near that district and who presumably conduct business in that community."  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

The NDCA has a strong—and indeed the only—local interest in this case.  The NDCA is where Clover is based, and where the relevant development, marketing, and business decisions related to the Accused Products have and continue to take place.  Ex. B ¶¶ 7-8; Ex. C ¶¶ 9-12; Ex. D ¶¶ 11-13.  In other words, the NDCA is where the "events forming the basis for the [alleged] infringement … transpired."  *LBT*, 2022 WL 2541355, at *8; *see In re Fedex Corp. Servs., Inc.*, No. 2022-156, 2022 WL 10887770, at *2 (Fed. Cir. Oct. 19, 2022).  These facts conclusively establish the NDCA's strong local interest in this dispute.

This District, in contrast, has no local interest in the dispute.  ***No*** research, design, development, or marketing efforts occurred here.  *See* Ex. B ¶¶ 3, 7-9, 12-18; Ex. C ¶¶ 4, 9-12, 14; Ex. D ¶¶ 5, 11-14.  Plaintiff has no known presence in this District other than litigation, which is afforded "no weight" under this factor.  *Fedex*, 2022 WL 10887770, at *2 (refusing to credit an "artifact of litigation" as a relevant local connection) (citation omitted).  While Plaintiff's Complaint references Clover customers with branches in the WDTX, those are nationwide distributors that sell Clover products across the U.S. and are therefore immaterial.  *See Apple*, 979 F.3d at 1345; *LBT*, 2022 WL 2541355, at *7 ("[S]ale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." (citation omitted)); Ex. B ¶¶ 10-11.  Nor are the handful of Clover employees in Austin relevant.  Those employees have ***no***

responsibility for or involvement with the research, design, development, or marketing of the Accused Products.  Ex. B ¶ 8; Ex. C ¶ 12; Ex. D ¶¶ 11-12.  At most, they suggest a mere "general presence" in the District that is not entitled to any weight.  *See XR Commc'ns*, 2022 WL 3448746, at *6 ("Google has a general presence in this District but this Court would clearly abuse its discretion in according *any* weight to it.") (emphasis in original).

Because the "NDCA has a local interest in this Action and this District has none," *id.*, the local interest factor strongly favors transfer.

### 2.    The practical considerations factor is neutral.

Next, courts must consider "all other practical considerations that make trial of a case easy, expeditious and inexpensive."  *Volkswagen*, 545 F.3d at 314.  This factor is neutral at best.

No practical considerations make trial in this District easy, expeditious, or inexpensive, notwithstanding Plaintiff's prior litigation in this District.  The Federal Circuit has rejected that the "mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor."  *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021); *see Dish*, 2021 WL 4911981, at *3 (same).  This is because "cases involving the same patents but different defendants, products, and witnesses will not necessarily be expedited by being in the same court."  *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021) (Albright, J.); *see XR Commc'ns*, 2022 WL 3448746, at *8-9 (similar).  When the remaining factors favor transfer, moreover, co-pending litigation is "simply not sufficient to justify overriding the inconvenience to the parties and the witnesses."  *Dish*, 2021 WL 4911981, at *4 (citation omitted).

Here, the NCR and Lightspeed Actions cannot tip the transfer scales.  First, Plaintiff did not even assert infringement for one of the patents at issue here in the NCR Action.  *See* NCR Action Compl. ¶ 1 (alleging infringement of the '640 and '012 Patents, but not the '793 Patent).

Second, the NCR and Lightspeed Actions involve wholly "different defendant[s] with different hardware and different software and thus [are] likely to involve significantly different discovery and evidence." *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. 2022); *compare* Dkt. 1 ¶¶ 35-45, *with* NCR Compl. ¶¶ 25-30 *and* Lightspeed Compl. ¶¶ 41-75; Dkt. 1 ¶¶ 55-67 *with* NCR Compl. ¶¶ 40-41 *and* Lightspeed Compl. ¶¶ 85-125; Dkt. 1 ¶¶ 79-91, *with* Lightspeed Compl. ¶¶ 135-175. Because the cases involve markedly different issues and evidence, they "will not necessarily be expedited by being in the same court." *ParkerVision*, 2021 WL 401989, at *6. Indeed, the facts of this case are near-indistinguishable from the Federal Circuit's recent authorities refusing to credit co-pending cases as a reason to deny transfer. *See id.*; *NetScout*, 2021 WL 4771756, at *5; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

This is especially true given that Plaintiff's cases in this District may not ever be "co-pending." Final judgment in the NCR Action is forthcoming, and thus the NCR Action will likely not be co-pending with this action. Additionally, the defendant in the Lightspeed Action intends to seek a stay in this District given the institution of IPR of the '640 Patent, and Plaintiff has not indicated that it will oppose. Ex. A-2. These "practical considerations" establish that there are no "incremental gains" in judicial economy to be had by trying this significantly different case here—much less gains sufficient to "outweigh the clear benefits of transfer in light of … the other private-interest and public-interest factors." *Dish*, 2021 WL 4911981, at *4; *see XR Commc'ns*, 2022 WL 3448746, at *8 (granting transfer when other factors "greatly outmatched" this factor).

### 3.   The court congestion factor is neutral.

The court congestion factor "concerns whether there is an appreciable difference in docket congestion between the two forums." *XR Commc'ns*, 2022 WL 3448746, at *6 (citing *Juniper*, 14 F. 4th at 1322). As this Court has noted, the Federal Circuit considers this the "most speculative" factor and has "repeatedly diminished its importance to the transfer analysis." *Id.* When the other

"factors weigh in favor of transfer or are neutral, then the speed of the transferee district should not alone outweigh all of those other factors." *Id.* (citation omitted).

Here, this Court and the Federal Circuit have recently found that "[a]ny difference in docket congestion and time-to-trial" between this District and the NDCA is "negligible." *Id.*; *Juniper*, 14 F.4th at 1322 (same); *LoganTree*, 2022 WL 1491097, at *8 (same). That assessment—made by this Court and the Federal Circuit in September 2021 (*Juniper*), May 2022 (*LoganTree*), and August 2022 (*XR Commc'ns*), respectively—is equally true today. As a result, this "most speculative" factor is neutral and cannot justify retaining the case in the WDTX.

### 4. The familiarity of law and conflict-of-law factors are neutral.

The final public interest factors—"familiarity of the forum with the law that will govern the case; and … the avoidance of unnecessary problems of conflict of laws or in the application of foreign law"—do not sway the analysis in either direction. Both this Court and the NDCA are familiar with the law that will govern this case, and there are no conflict of laws or foreign law considerations at issue. Accordingly, these factors are neutral.

## V. CONCLUSION

As set forth above, the private and public interest factors, on balance, strongly favor transfer. Because the center of gravity of this case is in the NDCA, the NDCA is the clearly more convenient forum. Accordingly, Clover respectfully requests that the Court transfer this case to the NDCA under 28 U.S.C. § 1404(a).

Dated: October 28, 2022                Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Ransom
Texas State Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com
kelly.ransom@kellyhart.com

***Attorneys for Clover Network, Inc.***

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Plaintiff, and Plaintiff opposes this Motion and the relief sought herein.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing sealed documents via electronic mail on October 28, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

16