UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| CloudofChange, LLC,<br><br>　　Plaintiff,<br><br>　　v.<br><br>Clover Network, Inc.,<br><br>　　Defendant. | Case No. 6:22-CV-00634-ADA<br><br>**JURY TRIAL DEMANDED** |

**CLOUDOFCHANGE, LLC'S RESPONSE TO CLOVER'S OPPOSED
<u>MOTION FOR PROTECTIVE ORDER</u>**

██████████

I. **INTRODUCTION**

Plaintiff CloudofChange, LLC ("CloudofChange" or "Plaintiff") opposes Defendant Clover's motion for a protective order (Dkt. 34). Clover seeks to limit CloudofChange's venue discovery, despite this Court's standing order allowing parties to conduct venue-based discovery. Clover's allegation that CloudofChange's latest discovery requests came "only after Clover adduced overwhelming evidence showing that the originally accused Clover products and this case have no connection with the Western District of Texas" is not an accurate representation of the events leading to this motion. Dkt. 34, p. 1.

Clover claims to have conducted "a thorough investigation of the Accused Products identified in the Original Complaint and Plaintiff's Preliminary Infringement Contentions." *Id.* However, Clover has unilaterally scoped its investigation in a self-serving way to avoid discovery of its activities and products in the Western District of Texas that are relevant to the CloudofChange's asserted patents and, in Clover's words, "related to an accused feature of Clover Solo, Clover Station Duo, Clover Mini, or Clover Dashboard." Ex. 1 (Clover's Response to RFPs). Further, Clover's scant document production in response to CloudofChange's discovery requests is surprising given the thoroughness with which Clover claims to have conducted its investigation. Clover's uncorroborated "determination" that all of the Accused Products were researched, designed, and developed at Clover's headquarters in Sunnyvale, California is misleading and does not excuse its deficient responses to CloudofChange's discovery requests.

CloudofChange subsequently amended its Preliminary Infringement Contentions along with its Original Complaint as permitted by this Court's Order Governing Proceedings (OGP) – 4.2 (*see* p. 12, n. 12) based on CloudofChange's discovery of additional infringing activities and product in the Western District of Texas. Clover's bare allegation of a fishing expedition does

1

nothing to change the fact that: (i) CloudofChange has fully complied with the requirements set forth in this Court's Order Governing Proceedings and the local rules of the Western District of Texas; and (ii) Clover's attempt to escape venue in the Western District of Texas is futile in view of Clover's venue-related production.

## II. LAW AND ARGUMENT

### A. The law disfavors precluding venue-related discovery, despite the discretion this Court possesses in resolving discovery disputes.

"Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Crosby v. Louisiana Health Services & Indemnity Co.*, 647 F.3d 258, 277 (5th Cir. 2011) (quoting FED. R. CIV. P. 26(b)(1)). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action…." FED. R. CIV. P. 26(b)(1). Notably, Clover does not assert privilege as the basis for avoiding responding to CloudofChange's discovery requests in its motion seeking a protective order. Here, the discovery requested is of great importance because it concerns whether this action should remain in this Court. *See* Dkt. 34, p. 2.

The Federal Rules further recognize that "the parties' relative access to relevant information" plays a role in the discovery analysis. FED. R. CIV. P. 26(b)(1). This Court has recognized how "information asymmetry" disproportionately favors the alleged patent infringer. *Parus Holdings Inc. v. Google LLC*, No. W-19-CV-00433-ADA, 2020 U.S. Dist. LEXIS 267235, at *13 (W.D. Tex. Feb. 27, 2020) (Albright, J.). Information asymmetry is one reason that this Court has held that "[a]s a general matter, the Court is favorably disposed to granting motions to conduct venue-related discovery… [because] the plaintiff can only use publicly-available information… whereas the defendant has access to both publicly-available and confidential

information to support a motion to transfer venue. Allowing venue-related discovery reduces that information asymmetry." *Id.*

Clover's attempt to hand-waive away these concerns by stating that it "supported its Motion with ample evidence, including the following declarations of senior-level Clover personnel" has been well-anticipated by this Court. Dkt. 34, p. 3. A § 1404(a) transfer movant's declarations "generally emphasize favorable facts and **minimize or omit unfavorable facts**. This is particularly problematic when a court considers declarations in support of a motion to transfer because they are generally untested by cross-examination and uncorroborated by document production." *Parus*, 2020 U.S. Dist. LEXIS 267235, at *13 (emphasis added). Here, venue-related discovery is appropriate because it allows the Court to determine how much weight it should properly afford Clover's self-serving declarations. *Id.*

CloudofChange agrees that this Court has considerable discretion with regards to how it handles its discovery matters. This Court, in accordance with its prior rulings and the Federal Rules of Civil Procedure, should not outright preclude CloudofChange from obtaining venue-related discovery concerning Clover Sport. This Court has already placed reasonable limits on CloudofChange's discovery requests in its Standing Order Governing Proceedings (OGP) – 4.2 (*see* Sec. V, p. 5).

**B.     CloudofChange's amendments to its Complaint and Preliminary Infringement Contentions were done pursuant to the Court's Order Governing Proceedings, not to defeat transfer.**

In its motion seeking a protective order, Clover repeatedly calls attention to the fact that CloudofChange amended its Preliminary Infringement Contentions and its Complaint. *See e.g.*, Dkt. 34, pp. 1-4. Clover insinuates that CloudofChange made these amendments to keep this case in this District. *Id.* at 4. Not so.

Clover's document production on December 2, 2022 (ten days before CloudofChange

3

amended its Complaint) in response to CloudofChange's First Set of Requests for Production revealed activities and products in the Western District of Texas ███████████

██████████████████████████████████████

██ ████████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████



"Bypass" was later combined with other Accused Products (*e.g.*, Clover Station Duo) and rebranded as "Clover Sport (formerly Bypass)," at least on information and belief based on one of Clover's webpages, https://www.bypassmobile.com/point-of-sale-hardware/ (Ex. 4):



For at least these reasons, Defendant's allegations of a fishing expedition are inappropriate.

Further, CloudofChange made its amendments in compliance with this Court's Order Governing Proceedings (OGP) – 4.2.  Specifically, CloudofChange amended its preliminary infringement contentions "without leave of court" since "it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served **and should do so seasonably upon identifying any such material**." *Id.* (emphasis added).  The Original Complaint alleged Clover's patent infringement by way of its products "including: (i) Clover Station Solo, (ii) Clover Station Duo (formerly Station Pro), (iii) Clover Mini, and (iv) Clover Dashboard." Dkt. 1, p. 5.  In no way did CloudofChange limit itself to only those products explicitly listed (as evidenced by the use of the word "including").  Instead, as CloudofChange became aware of additional Clover products that infringe

6

its Asserted Patents, CloudofChange timely amended its Complaint and Preliminary Infringement Contentions to include the newly-identified products and activities.  Dkt. 24, p. 6.

Clover misapplies this Court's procedures in its motion.  Clover suggests that because at least some information pertaining to Clover Sport was publicly available at the time that CloudofChange filed its Original Complaint that must mean that CloudofChange's inclusion of Clover Sport now is nothing more than a ploy to manipulate venue to keep the case in the Western District of Texas.  This is false.  In addition to information from Clover's discovery discussed above, CloudofChange undertook reasonable efforts to prepare both its Original Complaint and Preliminary Infringement Contentions.  As contemplated by this Court's Order Governing Proceedings, CloudofChange continued to look for evidence of Clover's patent infringement.  *Id.*  After CloudofChange continued its reasonable investigation and in light of Clover's venue-related discovery production, it promptly filed its First Amended Complaint and Amended Preliminary Infringement Contentions with the Court to include Clover Sport.

Clover then asserts that "Plaintiff's Amended Preliminary Infringement Contentions ('Amended PICs') likewise do nothing more than identify Clover Sport by adding it to the list of Accused Products, Ex. 1-D (Amended PICs), and they do not come close to identifying how Clover Sport allegedly infringes."  Dkt. 34, p. 5.  Clover's characterization of CloudofChange's Amended Preliminary Infringement Contentions is inaccurate.  CloudofChange identified Clover Sport (formerly Bypass) as satisfying various claim elements for all Asserted Patents.  *See* Dkt. 34-5.

Clover also misapplies the law.  For example, Clover states that "venue is determined at the date of filing" relying on the Federal Circuit's recent decision in *In re Amazon*. *In re Amazon* , No. 2022-157, 2022 U.S. App. LEXIS 34596, at *6 (Fed. Cir. Dec. 15, 2022).  However, that decision was referring to the plaintiff's practice of adding in multiple **additional parties** after a

7

motion to transfer was filed. *Id.*

The facts in *In re NetScout* are similarly distinguishable. *In re NetScout*, No. 2021-173, 2021 U.S. App. LEXIS 30500 (Fed. Cir. Oct. 13, 2021). *In re NetScout* involved a plaintiff who was formed "just a week before its acquisition of the asserted patents and less than two months before filing this lawsuit." *Id.* at *8. Furthermore, the plaintiff "had filed additional related lawsuits in the Western District of Texas after the transfer motion was filed in this case." *Id.* at *2-3.

The facts of this case are plainly distinguishable from the case law cited by Clover. CloudofChange has not added any new parties, patents, or claims to this lawsuit. CloudofChange did not file additional related lawsuits in the Western District of Texas after Clover filed its transfer motion. Nor was CloudofChange formed less than two months before this lawsuit was filed. Rather, Clover Sport was added as CloudofChange was continuing its reasonable investigation into its infringement allegations and in view of Clover's responses to its discovery requests. Specifically, the venue-related discovery led to the identification of Clover Sport and its infringement at the time of filing of the original Complaint (including its continued infringement today), as well as the identification of related Clover personnel in the Western District of Texas.

Finally, Clover errs in its reliance on this Court's decision in *Phoji, Inc. v. Atlassian, Inc*. *Phoji, Inc. v. Atlassian, Inc*., No. 6:21-cv-00888-ADA, 2022 U.S. Dist. LEXIS 116531 (W.D. Tex. June 23, 2022). This Court did **not** hold that the plaintiff took manipulative measures to defeat transfer. Instead, the Court simply found that a particular factor weighed in favor of transfer. *Id.* at *7. Nothing in that decision suggests that CloudofChange should be denied its fair opportunity to obtain discovery from Clover. CloudofChange should not be required to show how Clover

Sport's personnel have knowledge of how the infringing technology is implemented without discovery from Clover.

### C. Clover's failure to respond to CloudofChange's reasonable discovery requests necessitates further venue related discovery.

CloudofChange sent out its first set of discovery requests on November 4, 2022. In particular, CloudofChange sent Clover its First Set of Requests for Production (RFPs 1-7) and First Set of Interrogatories (ROGs 1-4). Ex. 2; Ex. 3. Notwithstanding its "thorough investigation," Clover has only produced approximately 300 documents thus far, including references to Bypass (but no explicit reference to Clover Sport). This is despite CloudofChange's request for "promotional activities, localized customer support, ongoing contractual relationships, targeted marketing efforts, presentations, agendas, or other services occurring in or directed to the Western District of Texas on or after July 26, 2016." Ex. 2. It would be reasonable to anticipate that an explicit reference to Clover Sport and related documents would be responsive to this request, given that "Clover Sport was and continues to be designed and developed in Austin, Texas", and Clover Sport is related to an accused feature of the Accused Products as discussed above. Dkt. 34, p. 4; *see* Ex. 4. Clover's failure to respond to this discovery request underscores the need for CloudofChange to be granted its requested venue-related discovery. Clover cannot fail to produce responsive discovery documents while at the same time chastising CloudofChange for its alleged failure to provide details concerning how Clover Sport factors into its infringement allegations.

### D. This Court should not grant Clover's overly restrictive protective order because Clover Sport should be considered in this Court's § 1404(a) analysis.

CloudofChange's requested discovery and depositions are well within the bounds of reasonable transfer discovery and do not require more than the Court's standard protective order. Clover argues that "[t]he burden that transfer discovery related to Clover Sport would impose on

9

Clover cannot be overstated." Dkt. 34, p. 10.  CloudofChange seeks limited discovery, including two brief depositions from Clover Sport personnel, which is likely to lead to the discovery of admissible evidence.  Clover's failure to respond CloudofChange's discovery requests has resulted in the exact type of information asymmetry decried by this Court.  *Parus*, 2020 U.S. Dist. LEXIS 267235, at *13.  Clover's assertion that it "determined that an overwhelming majority of the sources of proof and witnesses with knowledge of the Original Accused Products were in NDCA" is self-serving and unverified.  *See id.*  CloudofChange asks that this Court deny Clover's motion for an overly-restrictive protective order, which is designed to allow Clover to avoid venue discovery altogether.

### III.   CONCLUSION

For the reasons stated above, CloudofChange respectfully asks this Court to deny Clover's Motion.

Dated:  December 30, 2022

Respectfully submitted,

By: */s/ John A. Yates*

John A. Yates
Attorney In Charge
Texas State Bar No. 24056569
jyates@pattersonsheridan.com

B. Todd Patterson
Texas State Bar No. 00789537
tpatterson@pattersonsheridan.com

Kyrie Kimber Cameron
Texas State Bar No. 24097450
kcameron@pattersonsheridan.com

Edgar Neil Gonzalez
Texas State Bar No. 24092431
egonzalez@pattersonsheridan.com

**Patterson + Sheridan LLP**
24 Greenway Plaza, Suite 1600

Houston, Texas 77046
(Tel): 713-623-4844
(Fax): 713-623-4846

Abelino Reyna
Texas State Bar No. 24000087
areyna@pattersonsheridan.com

Craig V. Depew
Texas State Bar No. 05655820
cdepew@pattersonsheridan.com

**Patterson + Sheridan LLP**
729 Washington Ave., Suite 200
Waco, Texas 76701
(Tel): 254-777-5248
(Fax): 877-777-8071

*Attorneys for Plaintiff,*
*CloudofChange, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all counsel of record on December 30, 2022.

*/s/ John A. Yates*
John A. Yates



11