IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| CLOUDOFCHANGE, LLC,<br><br>            Plaintiff,<br>v.<br><br>CLOVER NETWORK, INC.,<br><br>            Defendant. | Civil Action No. 6:22-CV-00634-ADA-DTG<br><br>**JURY TRIAL DEMANDED** |

**CLOVER NETWORK, LLC'S REPLY IN SUPPORT OF
OPPOSED MOTION FOR PROTECTIVE ORDER**

Plaintiff CloudofChange, LLC's Response to Defendant Clover Network, LLC's[1] Motion for Protective Order fails to directly address the issue before this Court—whether the scope of venue discovery should be limited to the facts and circumstances that existed at the time this lawsuit and Clover's Motion to Transfer were filed. *See* Dkt. 34 (Mot. for Prot. Order); Dkt. 43 (Resp. to Mot. for Prot. Order ("Resp.")).

As demonstrated in Clover's Motion, Plaintiff has attempted to drastically alter the factual landscape relevant to the convenience of parties and witnesses by amending its claims to accuse a new product, Clover Sport, with "roots in Austin" ***after*** Clover (1) conducted a thorough venue investigation relating to the accused products identified in Plaintiff's Complaint and Preliminary Infringement Contentions ("PICs"), (2) determined that an overwhelming number of witnesses with knowledge of those products and other sources of proof are in the Northern District of California ("NDCA") where Clover's Sunnyvale, California headquarters is located while none are in this District, and (3) moved to transfer this case to NDCA under 28 U.S.C. § 1404(a). *See*

---

[1] Clover Network, Inc. converted to Clover Network, LLC in 2021, before Plaintiff filed this lawsuit.

1

Dkt. 1 (Compl.); Dkt 34-4 (PICs). Plaintiff's amendments accusing a new Clover product based in Austin after Clover's Motion to Transfer was filed are blatant "manipulative measures designed to defeat transfer to a more convenient venue," that both this Court and the Federal Circuit have cautioned must be guarded against. *In re Amazon.com, Inc.*, No. 22-157, 2022 WL 17688072, at *4 (Fed. Cir. Dec. 15, 2022); *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021); *Phoji, Inc. v. Atlassian, Inc.*, 6:21-CV-00888-ADA, 2022 WL 2392876, at *3 (W.D. Tex. July 1, 2022). Evidence relating to the late-accused Clover product thus should not be considered to resolve the § 1404(a) venue convenience issues. As a result, discovery relating to Clover Sport is not proportional to the present needs of the case, and a protective order precluding discovery on that product should be granted.

**A.      Venue Manipulation Is At The Center Of This Discovery Dispute.**

Plaintiff's Response fails to point to a single reason that this Court should ignore the tell-tale signs of venue manipulation here that were also present in the *Amazon.com*, *NetScout*, and *Phoji* cases discussed in Clover's Motion. *See id.*; *NetScout*, 2021 WL 4771756, at *5; *Phoji*, 2022 WL 2392876, at *3. In the three cases, the plaintiffs accused new products (*Phoji*), accused new defendants (*Amazon.com*), or filed new lawsuits (*NetScout*) after the defendants moved to transfer. While those cases had few contacts with the Western District of Texas ("WDTX") at the time motions to transfer were filed, in each case "post-[transfer] motion events" implicated the WDTX. In *Phoji*, this Court declined to credit the plaintiff's conclusory post-motion allegations accusing a new product with "roots in Austin" for purposes of the § 1404(a) analysis. 2022 WL 2392876, at *3. In *Amazon.com* and *NetScout*, the Federal Circuit refused to consider "post-motion events" at all, emphasizing that venue is "determined at the date of filing," and "post-motion events" are highly "suspect." *Amazon.com*, 2022 WL 17688072, at *3; *see also NetScout*, 2021 WL 4771756, at *5.

2

Plaintiff's attempts to distinguish these cases fail and cannot overcome the key take-away—that facts and circumstances related to claims (whether based on a new accused product or a new party) asserted *after* a transfer motion is filed should not be considered in a § 1404(a) analysis. This is precisely why Clover's transfer motion should be decided based on the relevant facts and circumstances related to the accused products identified in the original Complaint and not the post-motion accused product, Clover Sport. Consequently, discovery regarding Clover Sport is overbroad and should be precluded.

**B.      Plaintiff's Arguments Regarding Clover's Discovery Responses And The Timeliness Of The Amended Complaint Are A Sideshow.**

Plaintiff ignores the key venue manipulation and scope of venue discovery issues. Instead, Plaintiff first claims that Clover "unilaterally scoped its investigation in a self-serving way to avoid discovery of its activities and products in the [WDTX]." Resp., 1. But the scope of Clover's venue investigation was necessarily dictated by the claims that Plaintiff itself chose to assert and the products it accused in the original Complaint. Thus, it is Plaintiff, not Clover, who "unilaterally" controlled the scope of facts and circumstances relevant to venue, which dictated the scope of Clover's investigation. Clover's venue investigation did not focus on Clover Sport because Plaintiff did not identify Clover Sport as an accused product in its Complaint or PICs. Plaintiff's suggestion that Clover somehow had an obligation to investigate claims not asserted against it and products that Plaintiff did not accuse is both confounding and meritless.

Plaintiff next argues that "[a]llowing venue-related discovery reduces . . . information asymmetry" and suggests that it has somehow been deprived of an opportunity to test Clover's venue evidence "by cross examination." *Id.* at 3. But the issue here is about the scope of transfer discovery, not "information asymmetry." Plaintiff's pursuit of discovery on a product accused

*after* Clover moved to transfer and which should not be considered for purposes of the transfer analysis raises a scope issue.

Conversely, Plaintiff's ability to test and cross-examine Clover's evidence relating to the *original* accused products—a symmetry issue—remains intact. But Plaintiff has not noticed the deposition of even one of the senior-level Clover personnel whose declarations address the original accused products—a telling fact that belies its claim of "information asymmetry." Plaintiff cannot simply manufacture an issue of "information asymmetry" by choosing not to pursue discovery to "test" the evidence supporting Clover's transfer motion.

Finally, Plaintiff's focus on the timeliness of the amendments accusing Clover Sport are a red herring. *See* Resp., 6-7. Despite citing a publicly available website advertising Clover Sport in the Response itself, Plaintiff claims that it learned of Clover Sport through venue discovery and points to references to "Bypass" in two summary spreadsheets listing merchants in Texas and WDTX produced by Clover. *Id.* at 4-5. Not only is Plaintiff's interpretation of these references to Bypass nothing more than speculation, the entire discussion is irrelevant to the transfer discovery issue now before this Court. Clover has not argued that Plaintiff failed to meet this Court's pleading amendment deadline. Nor is Clover asking the Court to rule on the merits of Plaintiff's new claims relating to Clover Sport. Rather, Clover is arguing that Plaintiff is not entitled to venue discovery on the "late-added," "post-motion" allegations that Plaintiff could have easily asserted—if valid— "at the date of filing." *Amazon.com*, 2022 WL 17688072, at *3.

\* \* \*

The venue discovery on a "late-added" product that Plaintiff accused only after Clover sought transfer is overbroad and unduly burdensome and not proportional to the needs of this case related to transfer. Clover's Motion for Protective Order should therefore be granted.

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel (Tex. Bar No. 16584975)
Kelly Ransom (Tex. Bar No. 24109427)
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com
kelly.ransom@kellyhart.com

Caitlyn Hubbard (Tex. Bar No. 24097853)
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel: (817) 332-2500
caitlyn.hubbard@kellyhart.com

Greg H. Lantier (*Pro Hac Vice*)
R. Gregory Israelsen (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE AND DOOR LLP**
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Gregory.Lantier@wilmerhale.com
Greg.israelsen@wilmerhale.com

Sarah B. Petty (*Pro Hac Vice*)
Amy L. Mahan (*Pro Hac Vice*)
Jeannette Leopold (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE AND DOOR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Sarah.Petty@wilmerhale.com
Amy.Mahan@wilmerhale.com
Jeannette.Leopold@wilmerhale.com

*Attorneys for Clover Network, LLC*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that the foregoing was filed with the Court and served via the Court's ECF E-Filing Service System on all counsel of record on January 6, 2023.

*/s/ J. Stephen Ravel*