**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **CLOUDOFCHANGE, LLC,** | **Civil Action No. 6:22-CV-00634-ADA-DTG** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **CLOVER NETWORK, INC.,** | REDACTED PUBLIC VERSION |
| **Defendant.** | █████████████ |

**CLOVER'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**
**TO THE NORTHERN DISTRICT OF CALIFORNIA[1]**

---

[1] Dkt. 18 (Clover's Motion to Transfer Venue); Dkt. 61 (Response to Motion to Transfer).

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................................................I

TABLE OF AUTHORITIES ........................................................................................................II

I.     INTRODUCTION ................................................................................................................1

II.    THE LATE-ACCUSED CLOVER SPORT PRODUCT .....................................................2

   A.   The Clover Sport Product and Plaintiff's Late Amendment.................................................2

   B.   Transfer Discovery on Clover Sport. .................................................................................2

   C.   Clover Sport Is Entitled to No Weight in the § 1404(a) Analysis. .....................................4

III.   THE PUBLIC AND PRIVATE INTEREST FACTORS SUPPORT TRANSFER. .............5

   A.   The Private Interest Factors Strongly Favor Transfer to the NDCA. .................................5

   B.   The Public Interest Factors Strongly Favor Transfer to the NDCA. ..................................7

   C.   Plaintiff's Allegations of Discovery Abuse are Not Rooted in Reality or the Record. .......8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
  No. 2:17-cv-513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018) ................................5, 7

*CloudofChange, LLC v. NCR Corp.*,
  No. 6:19-cvV-513, 2020 WL 6439178 (W.D. Tex. Mar. 17, 2020) ....................................6, 7

*In re Adobe Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) .........................................................................8

*In re Amazon.com, Inc.*,
  No. 22-157, 2022 WL 17688072 (Fed. Cir. Dec. 15, 2022) ....................................4

*In re Google LLC*,
  58 F.4th 1379 (Fed. Cir. 2023) ...............................................................................8

*In re Google, LLC*,
  No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ...................................6

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ...............................................................................5

*In re NetScout Sys., Inc.*,
  No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)................................4, 7

*In re Samsung Elecs., Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ..............................................................................6, 7

*LBT IP II LLC v. Uber Techs., Inc.*,
  No. 6:21-cv-1210-ADA, 2022 WL 2541355 (W.D. Tex. July 6, 2022).................................7

*Logan Tree LP v Apple Inc.*,
  6:21-cv-00397-ADA, 2022 WL 1491097 (W.D. Tex. May 11, 2022)....................................5

*Performance Chemical Co. v. True Chemical Solutions, LLC*,
  W-21-cv-222-ADA (W.D. Tex. May 21, 2021) .......................................................8

*Phoji, Inc. v. Atlassian, Inc.*,
  6:21-cv-00888-ADA, 2022 WL 2392876 (W.D. Tex. July 1, 2022)....................................4, 5

*Smarter Agent, LLC v. Redfin Corp.*,
  No. 6:21-cv-1172-ADA, 2022 WL 2835861 (W.D. Tex. July 20, 2022)................................7

*Traxcell Technologies, LLC v. Verizon Wireless Personal Communications*,
 No. 6:20-cv-1175, 2022 WL 1127222, (W.D. Tex. Feb. 1, 2022............................................7

*VoIP-Pal.com v. Meta Platforms, Inc.*,
 No. 6:20-cv-00267-AD2022, WL 3021522 (W.D. Tex. July 28, 2022)...................................4

*XR Commc'ns, LLC v. HP Inc.*,
 No. 6:21-cv-694-ADA, 2022 WL 3448746 (W.D. Tex. Aug. 17, 2022) .............................7, 8

# I.     <u>INTRODUCTION</u>

Plaintiff fails to refute the overwhelming evidence that the Northern District of California ("NDCA") is the more convenient venue for this case:

1) Neither party is based in this District;

2) All of the Clover products accused in the Complaint and at the time that Clover moved to transfer (Clover Station Solo, Clover Station Duo, Clover Mini, and Clover Web Dashboard) ("Timely-Accused Products") were designed and developed in the NDCA;

3) All accused products are sold *nationwide*; and,

4) None of the twelve current and former senior management Clover has identified as potential witnesses reside in this District.

Unable to avoid these determinative facts, Plaintiff pivots to baseless claims of discovery misconduct that never occurred, a product that was accused too late to be considered in the transfer analysis, customers in this District of products sold nationwide, and third-party resellers with no contractual relationship with Clover. Plaintiff's arguments are neither rooted in reality nor supported by the record. The only discovery issues raised to this Court centered on Plaintiff's late amendment accusing *Clover Sport*. Plaintiff attempts to conflate the Clover Sport product with the Timely-Accused Products to manufacture ties to this District. But Clover does not own and did not develop Clover Sport; it was instead developed by Bypass Mobile ("Bypass") and is now owned by Fiserv, Inc. Plaintiff's unsupported arguments do not erase the drastic distinctions between the Timely-Accused Products and Clover Sport or the evidence that it was accused to manipulate venue and attempt to defeat transfer. Clover Sport should therefore have no weight in this Court's § 1404(a) analysis. Regardless, Clover Sport's connections to this District do not overshadow the four Timely-Accused Products' ties to the NDCA. Thus, irrespective of Clover Sport, the NCDA is the clearly more convenient venue for this case, and Clover's Motion should be granted.

## II.       THE LATE-ACCUSED CLOVER SPORT PRODUCT

**A.       The Clover Sport Product and Plaintiff's Late Amendment.**[2]

Plaintiff did not accuse "Clover Sport (formerly Bypass)" until six months *after* filing the Complaint and over a month after Clover moved to transfer. *See* Dkt. 24 (Am. Compl.). Plaintiff's amended pleading only added Clover Sport to the list of accused products and attempted to bolster the Complaint's venue allegations. Notably, Plaintiff did not name Fiserv, who actually owns Clover Sport, as a party or make any attempt in its amended pleading or infringement contentions to allege how the new product works or supposedly infringes. *Id*.; Ex. E-2 (Am. PICs).

"Clover Sport is one of many different third-party applications that can run on a Clover Station Duo" and other "Clover Network hardware." Ex. E-1 (Depo.) at 95:10-18, 134:9-9. The product was developed in Austin, Texas by Bypass, "an independent company that was acquired by Fiserve [sic] in 2020." *Id.* at 96:22-23. After being acquired by Fiserv in 2020, "Bypass management reported to Fiserv management." *Id*. at 14:3-4. Recently, in mid-2022, the Bypass product was "rebranded" as Clover Sport, and the Bypass team began "reporting to Clover Network management." *Id.* at 29:1-9. Despite its new name, the Clover Sport product continues to be owned by Fiserv and is not a Clover Network product.

**B.       Transfer Discovery on Clover Sport**

Given the telltale signs of venue manipulation associated with the late amendment, Clover promptly moved for a protective order precluding discovery on the late-accused Clover Sport product and limited its discovery responses to the Timely-Accused Products accordingly.[3] Dkt.

---

[2] Because Plaintiff accused Clover Sport after Clover moved to transfer, Clover provides the relevant factual and procedural background on the late-accused product in §§ II.A-B herein.
[3] Clover also responded to transfer discovery requests before Clover Sport was accused, and those responses were thus also limited to the Timely-Accused Products. Ex. E-3 (12/2/22 RFP Resp.).

34; Ex. E-4 (1/3/23 RFP Resp.). The hearing on that motion was only four days before the transfer

discovery deadline. Given the close of transfer discovery, this Court held that Plaintiff could take

only "a *short* 30(b)(6) deposition" on Clover Sport and seek supplemental responses to document

requests, which the Court directed Plaintiff to "narrowly tailor" (but Plaintiff never did). Ex. E-5

(Hrng. Tr.) at 43-44. But Plaintiff then noticed a deposition on *all accused products*, rather than

just Clover Sport. Clover agreed to testify on the noticed topics to avoid burdening this Court with

another discovery dispute and to prevent Plaintiff from claiming that it was deprived of discovery.

On February 14, 2023, Plaintiff deposed Clover's corporate representative ███████ for

approximately six hours. ██████ explained that Clover Sport is "separate … from the Clover

Network product line" (Ex. E-1 at 29:1-9) and has key distinctions:

- **Purpose/Clientele** - "The typical customer for Clover Network is a small business. The typical customer for Clover Sport is a large venue," like a stadium. *Id*. at 129:18-20. There are "about 600 nationwide Clover Sport customers of which approximately 10 [are] located in the State of Texas." *Id*. at 136:6-7.

- **Development** - "Clover Network products are developed, produced, researched in Sunnyvale California. The Clover Sport product […] is produced and developed and researched […] in Austin." *Id*. at 40:1-9.

- **Servers** - "The Clover Sport software uses Amazon Web Services to deliver its product to its customers. […T]he Clover Sport product, does not use the same Google Cloud Platform servers that Clover Network uses to deliver its products to its customers. *Id*. at 135:5-12.

- **Employees** - "The approximately 10 people that work in the Austin office that work on Clover Network products would not work on the Clover Sport product." *Id*. at 143:25-144:8.

Consistent with Clover's written discovery responses, ██████ explained that *Fiserv*, not Clover,

leases the former Bypass office in Austin; *no* personnel in that office work on any accused feature

of a Timely-Accused Product; and Clover neither owns nor leases any real property in Austin. *Id*.

at 85-88; Ex. E-3 at Resp. No. 5; Ex. E-4 at Resp. No. 8.

**C.    Clover Sport Is Entitled to No Weight in the § 1404(a) Analysis.**

Courts must guard against "manipulative measures designed to defeat transfer to a more convenient venue." *In re Amazon.com, Inc.*, No. 22-157, 2022 WL 17688072, at *4 (Fed. Cir. Dec. 15, 2022); *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021); *Phoji, Inc. v. Atlassian, Inc.*, 6:21-cv-00888-ADA, 2022 WL 2392876, at *3 (W.D. Tex. July 1, 2022). Plaintiff's Clover Sport allegations present the same telltale signs of venue manipulation present in *Amazon*, *NetScout*, and *Phoji*. In each, the plaintiffs accused new products (*Phoji*), accused new defendants (*Amazon*), or filed new lawsuits (*NetScout*) after the defendants moved to transfer. While the cases originally had few or no contacts with this District, "post-motion events" increased those ties. In *Phoji*, this Court declined to credit the plaintiff's conclusory, post-motion allegations accusing a new product with "roots in Austin." 2022 WL 2392876, at *3. In *Amazon* and *NetScout*, the Federal Circuit refused to consider "post-motion events" at all because venue is "determined at the date of filing," and "post-motion events" are highly "suspect." *Amazon*, 2022 WL 17688072, at *3; *NetScout*, 2021 WL 4771756, at *5.

Plaintiff's late amendment accusing Clover Sport requires the same result here. Plaintiff's Clover Sport allegations are threadbare and "suspect." *Phoji*, 2022 WL 2392876, at *3; *Amazon*, 2022 WL 17688072. Clover Sport is a third-party application owned by Fiserv that "run[s] on" Clover hardware—like many other third-party applications. But Plaintiff did not sue Fiserv, likely to prevent the same "sever and transfer" result as in *Amazon*. 2022 WL 17688072, at *2-3 ("A court may [] sever any claim against a party to facilitate transfer"). This strategy cannot shield Plaintiff from the consequences of its venue manipulation. Because Clover Sport was accused too late and to "to affect the venue analysis," it is not entitled to any weight in the § 1404(a) transfer decision here. *See id.*; *VoIP-Pal.com*, 2022 WL 3021522, at *1.

4

### III.   THE PUBLIC AND PRIVATE INTEREST FACTORS SUPPORT TRANSFER.

### A.   The Private Interest Factors Strongly Favor Transfer to the NDCA.

**1.   Party Witnesses -** Plaintiff buries the "single most important factor in the transfer analysis"—the "relative convenience for and cost of attendance of witnesses between the two forums." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021); Resp. at 12-15. Clover identified *seven* senior personnel with relevant knowledge of the research, design, development, marketing, and sales of the Timely-Accused Products—five are in the NDCA, and none are here. Mtn. at 3. Plaintiff offers no evidence that can refute these facts.

Plaintiff instead points to irrelevant Clover Sport personnel in Austin. Resp. at 12 (identifying ████████████████████████████. The Court should not consider these individuals due to Plaintiff's venue manipulation. Regardless, their presence in this District does not tip the scale. First, Plaintiff improperly double-counts Clover Sport personnel as both party and non-party witnesses. *See AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("These factors do not permit a single source of proof or witness to be 'double counted.'"). Second, with the exception of ██████████, Plaintiff has not "sufficiently explained the relevant and material knowledge these employees possess." *Logan Tree LP v Apple Inc.*, 6:21-cv-00397-ADA, 2022 WL 1491097, *7 (W.D. Tex. May 11, 2022). ██████████████████ have no "symmetry in title" to the more senior personnel in the NDCA, New York, and New Jersey that Clover identified and to whom all Clover Sport personnel now ultimately report. Ex. E-1 at 151:6-9; Ex. E-6 (██████ Decl.). Plaintiff's citation to lower-level personnel is unhelpful and "speculative." *Logan Tree,* 2022 WL 1491097 at *7. Third, the "number of witnesses in the NDCA far outweighs these few [Clover Sport] personnel in Austin." *Phoji*, 2022 WL 2392876, at *3. With or without Clover

5

Sport, the "numerous witnesses in the transferee venue" heavily favor transfer. *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

   **2.   Non-Party Witnesses** - The NDCA has subpoena power over five former senior Clover employees with key knowledge of the Timely-Accused Products. Mtn., Ex. B, ¶¶ 19-24. Plaintiff has "nothing on the other side of the ledger[.]" *In re Samsung Elecs., Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). While Plaintiff references a former Clover database engineer and a product manager ████████████████████████, neither worked on the accused point of sale features, and Plaintiff offers *no* evidence that they have relevant knowledge. Resp. at 10; Ex. E-1 at 112-114.

   Plaintiff next relies on Clover's merchant customers in this District, bank partner resellers in Texas, and two third-party resellers in Austin who have no contractual relationship with Clover. *See* Resp., Exs. G, I, L, M-N. But even the Clover documents Plaintiff cites show that **only 1% of Clover merchants in the U.S. are in this District** (Resp., Ex. G at 1); bank partner resellers are located throughout Texas (and across the nation), not just this District (Resp., Ex. I); the third-party resellers do not contract with or share any direct relationship with Clover (Resp., Exs. M at ¶ 9 and N at ¶ 9); and Clover products are marketed and sold nationwide (Resp., Ex. L (identifying California (twice) and 18 other states where Clover products are marketed). Plaintiff relies on this evidence even though this Court rejected that very argument in Plaintiff's prior litigation. *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cvV-513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020). There, like here, "CloudofChange has not shown any of these potential witnesses [in WDTX] are more essential than other" customers in the U.S. *Id.*

   **3.   Sources of Proof** - Plaintiff does not challenge Clover's evidence that sources of physical and electronic proof related to the Timely-Accused Products are in the NDCA. Plaintiff instead relies on alleged witnesses in this District, even though this factor "refers exclusively to

sources of documentary or physical proof." *AGIS*, 2018 WL 2329752, at *3. Regardless, customers, bank partners, and resellers and Clover Sport personnel are irrelevant and do not refute Clover's evidence that prototypes and other sources of proof are in the NDCA—where the Timely-Accused Products were developed. Thus, this factor strongly favors transfer. *See XR Commc'ns, LLC v. HP Inc.*, No. 6:21-cv-694-ADA, 2022 WL 3448746, at *3 (W.D. Tex. Aug. 17, 2022).

    **4.  Practical Considerations -** The *NCR* and *Lightspeed* actions do not tip the scale against transfer because mere co-pending litigation is never determinative. *In re NetScout*, 2021 WL 4771756, at *5; *Smarter Agent, LLC v. Redfin Corp*., No. 6:21-cv-1172-ADA, 2022 WL 2835861, at *7-*8 (W.D. Tex. July 20, 2022) (ordering transfer despite two co-pending suits). And IPR proceedings have been instituted for the only remaining "co-pending case" (*Lightspeed*), and the PTAB should soon rule on Clover's IPR petitions and motions to join the *Lightspeed* proceeding. This factor does not "justify overriding the inconvenience to the parties and witnesses" of this suit remaining in this District. *Samsung*, 2 F.4th at 1380. This factor is at best neutral.

**B.    The Public Interest Factors Strongly Favor Transfer to the NDCA.**

    **1.  Local Interest -** Only the NDCA has a local interest in this case. It is undisputed that the NDCA is where Clover is based and where the "events forming the basis for the [alleged] infringement … transpired." *LBT IP II LLC v. Uber Techs., Inc.*, No. 6:21-cv-1210-ADA, 2022 WL 2541355, at *8 (W.D. Tex. July 6, 2022). Plaintiff (again) relies on resellers and sales in this District, but that evidence is irrelevant because nationwide sales do not confer a local interest on any district. *Id.* Because the "NDCA has a local interest in this Action and this District has none," this factor strongly favors transfer.[4] *XR Commc'ns*, 2022 WL 3702271, at *9.

---

[4] Citing *Traxcell Technologies, LLC v. Verizon Wireless Personal Communications,* No. 6:20-cv-1175, 2022 WL 1127222, at *11 (W.D. Tex. Feb. 1, 2022), Plaintiff claims the WDTX has a local

**2. Court Congestion -** The court congestion factor is "the most speculative." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). When, as here, it is "undisputed that [Plaintiff] … is not engaged in product competition in the marketplace and is not threatened in the market in any way," a district court abuses its discretion in weighing this factor against transfer. *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). This factor is at best neutral.

**C.    Plaintiff's Allegations of Discovery Abuse are Not Rooted in Reality or the Record.**

Plaintiff's baseless claims of discovery misconduct are a red herring and are belied by Clover's fulsome discovery responses and approximately six hours of deposition testimony. Indeed, Clover's discovery responses included clear objections and were limited to the Timely-Accused Products. Plaintiff *never* raised a single issue with those discovery responses. The only discovery disputes presented to this Court centered on Plaintiff's tardy amendment and refusal to provide discovery about that amendment. Plaintiff's reliance on *Performance Chemical Co. v. True Chemical Solutions, LLC,* W-21-cv-222-ADA (W.D. Tex. May 21, 2021), reflects the lengths to which Plaintiff will stray from reality to distract from its venue manipulation. The sanctioned party in that case disobeyed a court order and "lied under oath" about key facts, coming clean only after the discovery period ended. *Id.* at *2-6. Clover committed no discovery misconduct, and Plaintiff's reference to *True Chemical* fails.

****

Key witnesses and sources of proof are in the NDCA where the four Timely-Accused Products were developed. The irrelevant witnesses and late-accused Clover Sport product on which Plaintiff relies fail to show that even one § 1404(a) factor weighs against transfer. Clover's Motion to Transfer should be granted.

---

interest because Clover has "allegedly infringing customers" in this District. Resp. at 15. But, unlike *in Traxcell*, there are not more Clover customers in this District than elsewhere.

March 17, 2023

Respectfully submitted

*/s/ Kelly Ransom*
Kelly Ransom (Tx. Bar No. 24109427)
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
kelly.ransom@kellyhart.com

Caitlyn Hubbard (Tx. Bar No. 24097853)
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel: (817) 332-2500
caitlyn.hubbard@kellyhart.com

Greg H. Lantier (*Pro Hac Vice*)
R. Gregory Israelsen (*Pro Hac Vice*)
Jennifer L. Graber (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE
AND DOOR LLP**
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Gregory.Lantier@wilmerhale.com
Greg.israelsen@wilmerhale.com
Jennifer.graber@wilmerhale.com

Sarah B. Petty (*Pro Hac Vice*)
Amy L. Mahan (*Pro Hac Vice*)
Jeannette Leopold (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE
AND DOOR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Sarah.Petty@wilmerhale.com
Amy.Mahan@wilmerhale.com
Jeannette.Leopold@wilmerhale.com

and

9

Jason D. Kipnis (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE
AND DOOR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
Fax: (650) 858-6100
Jason.Kipnis@wilmerhale.com

*Attorneys for Clover Network, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that all counsel of record are being served with a copy of the foregoing

sealed document via electronic mail on March 17, 2023.

*/s/   Kelly Ransom*