**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **CLOUDOFCHANGE, LLC,** | **Civil Action No. 6:22-CV-00634-ADA-DTG** |
|        **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **CLOVER NETWORK, INC.,** | ███████████████ |
|        **Defendant.** | <span style="color:red">**PUBLIC VERSION**</span> |

**CLOVER NETWORK, LLC'S RESPONSE TO**
<u>**OBJECTIONS TO ORDER GRANTING TRANSFER**</u>

Judge Gilliland correctly concluded that the Northern District of California ("NDCA") is the more convenient venue for this case. That conclusion is well supported:

- Neither party is based in this District;

- Ten of the twelve current and former senior management identified by Clover as potential witnesses reside in NDCA. None reside in this District;

- Clover Network, LLC ("Clover") designed and developed the four products accused in the original Complaint ("Timely Accused Products")[1] in the NDCA;

- Clover's prototypes and other sources of proof relevant to the Timely-Accused Products are located in the NDCA;

- Clover does not own the Clover Sport (formerly Bypass) product accused in the Amended Complaint after Clover moved to transfer; and

- All accused products are sold *nationwide*, and the presence of merchants and resellers in this District are irrelevant.

*See* Exs. A-D.[2] Plaintiff CloudofChange, LLC failed to refute these facts before Judge Gilliland granted transfer, and it has not and cannot do so now.

Plaintiff does not dispute that Judge Gilliland weighed the evidence related to each of the relevant § 1404(a) transfer factors. Nor does Plaintiff attempt to show that its evidence relevant to any individual public or private interest factor outweighed Clover's evidence supporting transfer, much less required a different outcome. Instead, Plaintiff asks this Court to review the Order *de novo* in full—the incorrect standard of review—and objects to (1) the Order's "application of *Hoffman v. Blaski*," (2) the sufficiency of the Order's "discussion," and form, and (3) the Order's "determination regarding Clover Sport." Dkt. 92 at 1-2, 4. Not one of Plaintiff's objections has merit, and each is an attempt to distract from what the evidence shows and Judge Gilliland had

---

[1] *See* Dkt. 1 at ¶ 7 (accusing Clover Station Solo, Clover Station Duo, Clover Mini, and Clover Dashboard).

[2] Exhibits A-D were exhibits to Clover's transfer briefing and are attached for ease of reference. The original docket numbers of the exhibit are referenced in Exhibit 1 (Decl. of Kelly Ransom).

ample discretion to find—that the NDCA is the clearly more convenient forum. Plaintiff has shown no clear error in that finding.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's original Complaint alleges that the four point-of-sale Timely-Accused Products owned by Clover infringe the Asserted Patents. Dkt. 1 at ¶ 8. Clover researched, designed, developed, and launched each of the Timely-Accused Products from its headquarters in Sunnyvale, California, within the NDCA, where most of that work continues to take place today. Ex. B at ¶ 6. The Timely-Accused Products are used and sold by merchants and distributors nationwide. *Id.* at ¶¶ 7-8; *see also* Exs. C-D.

Given the presence of relevant witnesses and sources of proof in the NDCA and the absence of any relevant connection to this District, Clover moved to transfer to the NDCA. Six months after Plaintiff filed the original Complaint and over a month after Clover sought transfer, Plaintiff amended its Complaint to accuse "Clover Sport (formerly Bypass)," a product developed and owned by third parties. *See* Dkt. 24. Plaintiff did not add Fiserv, Inc., the entity that ultimately owns the Clover Sport product, as a party. *Id.*[3] Reserving consideration of venue manipulation for the Court's transfer analysis, Judge Gilliland allowed transfer discovery on the late-accused Clover Sport product, and both parties fully briefed the issues relevant to Clover Sport, including the fact that it is not owned by Clover.

---

[3] *See* Dkt. 77 (Clover Reply) at 4 (explaining that Plaintiff likely did not sue Fiserv to prevent the same "sever and transfer" result as in *In re Amazon*.com, Inc., No. 11-157, 2022 WL 17688072 at *2-3 (Fed. Cir. Dec. 15, 2022) ("A court may [] sever any claim against a party to facilitate transfer")); *see also id.* (citing *In re NetScout Sys., Inc.*, 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021); *Phoji, Inc. v. Atlassian, Inc.*, 6:21-cv-00888-ADA, 2022 WL 2392876, at *3 (W.D. Tex. July 1, 2022)).

Judge Gilliland heard Clover's Motion to Transfer on April 14, 2023. Before arguments began, Judge Gilliland focused the parties' attention on Clover Sport, stating that "one of the things I'm curious about…[is] the whole connection with the Clover Sport product and the fact that it was developed and is owned by a third party and how that's relevant to this case…" Dkt. 87 (April 14, 2023 sealed Hearing Transcript) at 3:4-8. The parties therefore thoroughly addressed the facts and issues related to Clover Sport at the hearing. Plaintiff acknowledged Fiserv's ownership of Clover Sport but dismissed its decision not to sue Fiserv by stating it has "time to do so" if it finds a "need." *Id*. at 25:13-14; *see also id*. at 19:23-20:5 (Plaintiff arguing that it could prevail even "without Clover Sport's consideration" but failing to explain how). Clover demonstrated that it does not own Clover Sport and that the parties and the Timely-Accused Products have no relevant connection to this District. Judge Gilliland agreed with Clover and granted Clover's Motion from the bench.

## II.       LAW AND ARGUMENT

### A.    Plaintiff misstates the standard of review.

Plaintiff incorrectly asks this Court to review "the entire record *de novo*"—a standard that applies only to dispositive orders. Dkt. 92 at 1. Here, the *non*-dispositive transfer order issued under 28 U.S.C. § 636(b)(1)(A) is only subject to reconsideration "where it has been shown that the Magistrate Judge's order is clearly erroneous or contrary to law."[4] *See also* Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995); *Fuego Tobacco Shop LLC v. United States FDA*, No. 4:18-cv-00028, 2018 WL 11247716, at *2 (E.D. Tex. July 30, 2018) ("Federal law affords a Magistrate Judge broad discretion in the resolution of nondispositive [sic] pretrial

---

[4] *See* Dkt. 15 (referring "all non-dispositive pretrial matters" per 28 U.S.C. § 636(b)(1)(A)).

3

matters, such as a motion to transfer."). "Clearly erroneous" is a "highly deferential" standard, and "the Court must affirm the Magistrate's decision unless 'on the entire evidence [the Court] is left with a definite and firm conviction that a mistake has been committed.'" *Daedalus Blue, LLC v. Microsoft Corp.,* 6:20cv-01152, 2022 WL 3031076, at *1 (W.D. Tex. Aug. 1, 2022) (Albright, J.) (citation omitted). "In other words, even were the Court disposed to differ with the Magistrate, such a difference of opinion would not alone entitle it to reverse or reconsider the Order." *Id.*

Here, Judge Gilliland neither misapplied nor misinterpreted the applicable law. Plaintiff's Objections do not raise any specific issue of fact relevant to even one of the § 1404(a) transfer considerations, nor does Plaintiff argue that Judge Gilliland clearly erred in weighing those factors. In other words, Plaintiff's Objections provide no basis to disagree with Judge Gilliland's Order, much less support "a definite and firm conviction" that Judge Gilliland was mistaken to conclude that the NDCA is a clearly more convenient forum. *Daedalus Blue*, 2022 WL 3031076, at *1.

**B.     The Court did not rely on *Hoffman v. Blaski* to refuse to consider evidence related to Clover Sport.**

Plaintiff argues that Judge Gilliland relied on *Hoffman v. Blaski,* 363 U.S. 335, 343 (1960), to deny consideration of evidence related to the Clover Sport product, which Plaintiff accused after Clover moved to transfer. Dkt. 92 at 1-2. But the Court made no such ruling. The Order plainly states the Court "***declines* to rule on whether the addition of [Clover Sport] product after the filing of the motion to transfer prevents the Court from considering evidence related to it**." Dkt. 91 at 4 (emphasis added). The Order only cites *Hoffman* to support the statement of blackletter law that "[c]ourts evaluate the transfer factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference." *Id*. at 2.

Notably, this Court routinely repeats the same statement of law and cite to *Hoffman* in its own transfer rulings.[5]

Furthermore, Judge Gilliland did not exclude consideration of the Clover Sport product. The Order plainly states that the third-party product was entitled to "little to no weight" because "plaintiff has not shown that it is made, used, sold, or offered for sale by the named defendant." Dkt. 91 at 3. The fact that Clover Sport was accused after Clover moved to transfer was not the basis of the Court's conclusion that evidence of the product's ties to this District carries little to no weight in the transfer analysis. Plaintiff's convoluted argument to the contrary fails.

**C.      The Court's determination regarding Clover Sport is supported by the record.**

Plaintiff argues that Judge Gilliland's ruling regarding Clover Sport is "tainted by an inaccurate assessment of the facts"—a factual challenged reviewable only for clear error. Dkt. 92 at 4. But the Court's conclusion that the "plaintiff has not shown that it is made, used, sold, or offered for sale by the named defendant" is well supported. Dkt. 91 at 3. Clover offered ample evidence, including its corporate representative's testimony, showing that Clover Sport was developed by a third party, Bypass, and is now owned by Fiserv, not Clover. *See e.g.*, Ex. A at 96:22-23 (explaining that Clover Sport was developed in Austin by Bypass, "an independent company that was acquired by Fiserve [sic] in 2020").[6] Plaintiff offered *no contrary evidence.* It

---

[5] *See Togail Techs. Ltd. v. Apple Inc.*, W-22-cv-00326-ADA, 2023 WL 2958607, at *2 (W.D. Tex. Apr. 5, 2023); *SVV Tech. Innovations, Inc. v. Micro-Star Int'l Co., Ltd.*, 6:22-CV-511-ADA, 2023 WL 2775166, at *2 (W.D. Tex. Apr. 4, 2023*); Topia Tech., Inc. v. Dropbox, Inc.*, W-21-CV-01373-ADA, 2023 WL 1978909, at *2 (W.D. Tex. Feb. 13, 2023); *EcoFactor, Inc. v. Vivint, Inc.*, W-22-CV-00034-ADA, 2022 WL 17347158, at *2 (W.D. Tex. Nov. 30, 2022).

[6] *See also* Ex. A at 40:1-9 ("Clover Network products are developed, produced, researched in Sunnyvale California. The Clover Sport product […] is produced and developed and researched […] in Austin."); *id.* at 29:1-9 (explaining that the Bypass product was later "rebranded" as Clover Sport but the product continues to be owned by Fiserv and is not a Clover Network product).

instead acknowledged that Clover and Fiserv are not the same and stated, "[i]f we find the need to include Fiserv, we have time to do so." Dkt. 87 at 25:13-14; *see* Dkt. 91 at 3 ("The parties appear to agree that Clover Sport is not a product of the currently named defendant…"). Plaintiff's effort to recant its admission that Clover does not own the Clover Sport product fails. Dkt. 92 at 4. As Judge Gilliland confirmed, "[Y]eah, that was my understanding -- I couldn't remember whether it was Buypass [sic] or Binance [sic] designed the sport app and then, it was owned by Fiserv as opposed to named Defendant Clover. … [I] think I understand that now." Dkt. 87 at 25:16-21.

Clover's evidence also showed that Clover Sport "is one of many different third-party applications that can run on" Clover hardware but it does not use the accused Clover Network software. Ex. A at 95:10-18, 134:8-22.[7] This evidence demonstrates that Plaintiff's contention that Clover "uses" Clover Sport is a baseless overreach and legally irrelevant. And the new evidence of Clover products' alleged "use of Clover Sport" that Plaintiff asks this Court to now consider (albeit pursuant to the wrong provision of Rule 72) does not rebut Clover's evidence. *See* Dkt. 92 at 4, fn. 4 and 92-2, 92-3, 92-4, 92-5. Not only is Plaintiff's new evidence not persuasive, it is not permissible because "[a]t issue here is a non-dispositive order subject to Rule 72(a) clear error review. Because the district court's review of the magistrate judge's factual findings was limited to clear error review, there appears to be no basis for the district court to have received additional evidence." *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014) (citation omitted).

---

[7] Plaintiff's claim that Clover's Motion and Reply failed to "rebut the fact that Clover Sport uses the originally accused Clover products" is both misleading and false. Dkt. 92 at 4. Because Plaintiff accused Clover Sport *after* Clover moved to transfer, Clover's first chance to address Clover Sport was in its Reply, which explains "Clover Sport is a third-party application owned by Fiserv that 'run[s] on" Clover hardware—like many other third-party applications." Dkt. 77 at 2-4.

Thus, for several reasons, Judge Gilliland did not commit clear error in finding that Clover Sport is a third-party product entitled to "little to no weight" in the transfer analysis. Dkt. 91 at 3.

**D.    Plaintiff's general objection to the "Order's analysis of the transfer factors" fails.**

Plaintiff objects to the Order's "analysis of the transfer factors" but does not address any particular factor, challenge the Court's ultimate finding that the NDCA is the clearly more convenient forum, or show any evidence or factor that weighs against transfer. Instead, Plaintiff attacks the form of Judge Gilliland's Order by claiming that it "lacks sufficient discussion of key elements of the transfer analysis" and therefore *cannot* be properly challenged. Dkt. 92 at 2-3. But neither the Federal Rules nor any other authority support or excuse Plaintiff's failure to assert reasonably specific objections that demonstrate that the Order is "clearly erroneous or contrary to law." *See Burell v. Prudential Ins. Co. of Am.*, No. 13-0359-RCL, 2014 WL 12531492, at *1 (W.D. Tex. Sept. 29, 2014) (denying objections to magistrate judge's order where the objections provided "no justification at all" and fell "far short of demonstrating that the Order was 'clearly erroneous or contrary to law'").

Indeed, Plaintiff's argument relies exclusively on authorities interpreting Rule 52(a), which requires that a court sitting as the factfinder in a *bench trial* "find the facts *specially* and state its conclusions of law separately." Dkt. 92 at 3-4 (citing authorities[8] reviewing post-bench trial dispositive orders pursuant to Rule 52(a)). Rule 52(a) has *no relevance* here. Rather, Judge Gilliland's Order resolved a non-dispositive matter "referred to a magistrate judge to hear and

---

[8] *In re Missionary Baptist Found. Of Am., Inc.*, 796 F.2d 752 (5th Cir. 1986) (applying Bankr. Proc. Rule 7052 (incorporating Fed. R. Civ. P. 52 by reference) to review findings following bench trial); *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426 (5th Cir. 1977) (discussing Memorandum of Reasons awarding damages following a bench trial under Rule 52(a)); *Ratliff v. Governors Highway Safety Program*, 791 F.2d 394, 400 (5th Cir. 1986) (reviewing magistrate's findings under Rule 52(a)).

decide" and is therefore governed by Federal Rule of Civil Procedure 72(a). That Rule requires

that a magistrate judge "issue an order in writing and enter the order in the record. *A text order is*

*sufficient to satisfy this requirement*. In addition, an oral order read into the record by the magistrate

is sufficient to satisfy this requirement." *LaborFest LLC v. San Antonio,* SA-19-CV-00060-JKP,

2021 WL 2593632, at *2 (W.D. Tex. June 24, 2021) (emphasis added). It does not require or even

suggest that an order resolving a nondispositive pretrial matter such as transfer include detailed

findings of fact. *Comp.* Fed. R. Civ. Proc. 72(a), *with* Fed. R. Civ. Proc. 72(b) (for dispositive

orders, "[t]he magistrate judge must enter a recommended disposition, including, if appropriate,

proposed findings of fact.").

Regardless, Judge Gilliland's five-page Order does far more than simply state the Court's

decision. The Order provides the relevant factual background and legal standard, as well as a

detailed three-part discussion. *Id*. Notably, the Order provides two key rulings at the outset of the

discussion section: (1) venue is proper in the NDCA, and (2) evidence related to Clover Sport

carries little to no weight. *Id*. at 3-4. The Order then details the parties' positions with respect to

the individual § 1404(a) considerations before concluding that, "[g]iven the parties' briefing,

evidence, and arguments at the hearing, the Court finds that…NDCA is clearly more convenient

under the applicable factors." *Id*. at 5. This level of detail exceeds the minimal mandates of Rule

72(a), and Plaintiff's reliance on authorities applying Rule 52(a) fails.

Plaintiff cannot avoid its burden of proof or satisfy Rule 72(a)'s requirement to "assign as

error a defect in the [O]rder" through timely objections by claiming that the Order lacks sufficient

detail. Fed. R. Civ. Proc. 72(a). And a broad objection to the "analysis of the transfer factors" is

too general to focus this Court's attention on the factual and legal issues that are truly in dispute

and cannot serve as a catch-all capable of preserving more specific objections. Plaintiff could have

detailed the evidence it presented and attempted to show how and why it outweighed the evidence offered by Clover. Plaintiff chose not to do so.

## III.      CONCLUSION

Plaintiff has not shown that Judge Gilliland's Order is clearly erroneous or contrary to law. The Court's conclusion that the NDCA is the clearly more convenient forum is supported by the overwhelming evidence, which demonstrates that the § 1404(a) factors weigh in favor of transfer regardless of whether the Clover Sport product is considered:

| Factor | Evidence | Weight |
|---|---|---|
| **Party Witness** | • 5 party witnesses in NDCA<br>• 0 party witnesses in WDTX | Favors Transfer |
| **Non-Party Witness** | • 5 non-party witnesses with material knowledge in the NDCA<br>• 0 non-party witnesses with material knowledge relevant to the Timely-Accused Products<br>• 1 non-party witness with material knowledge relevant to the late-accused Clover Sport product | Favors Transfer |
| **Sources of Proof** | • All prototypes and documents relevant to the Timely-Accused Products in NDCA | Favors Transfer |
| **Practical Problems** | • Co-pending litigation is never determinative | Neutral |
| **Local Interest** | • "[E]vents forming the basis for the [alleged] infringement" occurred at Clover's headquarters in NDCA<br>• Resellers and sales of Clover products sold nationwide, including in WDTX, do not confer a local interest | Favors Transfer |
| **Court Congestion** | • Cannot weigh against transfer because Plaintiff is not engaged in product competition in WDTX | Neutral |

*See* Dkt. 77 (citations omitted).

Plaintiff failed to refute these facts before Judge Gilliland granted transfer, and it has not and cannot do so now. Plaintiff's Objections are baseless and should be overruled.

June 8, 2023                                        Respectfully submitted

*/s/ Kelly Ransom*
Kelly Ransom (Tx. Bar No. 24109427)
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6400
kelly.ransom@kellyhart.com

Caitlyn Hubbard (Tx. Bar No. 24097853)
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel: (817) 332-2500
caitlyn.hubbard@kellyhart.com

Gregory H. Lantier (*Pro Hac Vice*)
R. Gregory Israelsen (*Pro Hac Vice*)
Jennifer L. Graber (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE
AND DOOR LLP**
2100 Pennsylvania Ave., NW
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
Gregory.Lantier@wilmerhale.com
Greg.israelsen@wilmerhale.com
Jennifer.graber@wilmerhale.com

Sarah B. Petty (*Pro Hac Vice*)
Amy L. Mahan (*Pro Hac Vice*)
Jeannette Leopold (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE
AND DOOR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Sarah.Petty@wilmerhale.com
Amy.Mahan@wilmerhale.com
Jeannette.Leopold@wilmerhale.com

10

Jason D. Kipnis (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE AND DOOR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
Fax: (650) 858-6100
Jason.Kipnis@wilmerhale.com

*Attorneys for Clover Network, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via email on June 8, 2023.

*/s/ Kelly Ransom*

11